## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **EASTERN ATLANTIC STATES REGIONAL COUNCIL OF CARPENTERS, UBCJA,**<br><br>    **Petitioner,**<br><br>    **v.**<br><br>**CMS CONSTRUCTION, INC.,**<br><br>    **Respondent.** | Civ. No. 22-1615 (KM) (LDW)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    Presently before the Court is the petition of Eastern Atlantic States Regional Council of Carpenters, UBCJA (the "Union") to confirm an arbitration award. (DE 1.)[1] Respondent CMS Construction, Inc. ("CMS") filed a brief in opposition and a cross-motion to vacate the arbitration award. (DE 8-4.) For the reasons set forth below, the Union's motion to confirm the arbitration award is **GRANTED** and CMS's motion to vacate the arbitration award is **DENIED**.

---

[1]    Citations to the record will be abbreviated as follows:

    "DE" = Docket entry number in this case

    "Pet." = The Union's Petition to Confirm Arbitration Award (DE 1)

    "Arb. Op." = Arbitrator J.J. Pierson, Esq.'s decision, issued February 20, 2022 (DE 1 Ex. A.)

    "Cross Mot." = CMS's Brief in Opposition to the Union's Petition to Confirm and in Support of Cross-Motion to Vacate Arbitration Award (DE 8-4)

    "DaSilva Decl." Carlos DaSilva's Declaration in Support of Cross-Motion to Vacate Arbitration Award (DE 8-2)

    "Reply" = CMS's Reply Brief in Further Support of Cross-Motion to Vacate Arbitration Award (DE 11)

I.   **BACKGROUND**

A. **Factual Background**

CMS is a construction contractor that has been in business for about twenty years. (DaSilva Decl. ¶¶ 2–3.) Carlos DaSilva is the President of CMS. (*Id.* ¶ 1.) DaSilva's native language is Portuguese, and his second language is English. (*Id.* ¶ 4.) DaSilva states that he is able to speak English "enough to get by," but has a difficult time reading in English. (*Id.*)

The Union is a labor organization organized under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5). (Pet. ¶ 2.) On July 10, 2020, Cyndie Williams, a Union representative, met with DaSilva at a CMS worksite and presented him with a Short Form Agreement, which DaSilva signed. (DaSilva Decl. ¶¶ 5, 8, 18.) The Short Form Agreement was written in English and was not translated to Portuguese. (*Id.* ¶ 9.)

In June and July 2021, Daniel Sebban, another Union representative, visited one of CMS's worksites and noticed that non-Union members were performing work covered by the Union's Collective Bargaining Agreement. (Arb. Op. p. 2; Pet. ¶¶ 9–10.) Believing that CMS had breached the Collective Bargaining Agreement, the Union filed a grievance on July 22, 2021, and initiated arbitration proceedings. (Arb Op. p. 2; Pet. ¶¶ 12–16.)

B. **Arbitration Proceeding**

The parties, represented by counsel, appeared virtually before arbitrator J.J. Pierson, Esq., on September 16 and October 18, 2021. (Arb. Op. 1.) During the hearings, the arbitrator heard the testimony of Cyndie Williams, Daniel Sebban, and Mr. DaSilva. (*Id.* pp. 7–12.) The arbitrator also determined that the Short Form Agreement incorporated by reference the Collective Bargaining Agreement at issue. (*Id.* p. 1.)

The Union asserted that CMS violated the Collective Bargaining Agreement by utilizing non-Union workers to perform work within the Union's trade jurisdiction. (*Id.* p. 2.) The Union sought "a monetary award for lost wage and benefits." (*Id.*)

In response, CMS disputed the applicability of the Collective Bargaining Agreement. (*Id.*) According to CMS, Williams represented to DaSilva that the Short Form Agreement was for one CMS employee to join the Union solely for when he performed carpentry work. (*Id.*) CMS asserted that Williams misled DaSilva as to the scope and content of the Short Form Agreement to induce him to sign. (*Id.* p. 3.) Based on Williams' misrepresentations and DaSilva's inability to understand the terms of the English-written Short Form Agreement, CMS sought to void the Agreement based on fraud in the inducement, fraud in the execution, fraud, misrepresentation, and bad faith. (*Id.*)

The arbitrator issued his decision on February 20, 2022. The arbitrator found that he had jurisdiction pursuant to the Short Form Agreement. (*Id.* p. 1.)

The arbitrator also found that the Union established a prima facie case that CMS was a signatory to the Collective Bargaining Agreement via the Short Form Agreement. (*Id.* p. 10.) The arbitrator determined that DaSilva's testimony was "absent of any reference to coercive conduct by Ms. Williams" or any claim that a Union representative "insisted that he sign the Short Form Agreement without (or before) a review." (*Id.* p. 12.) The arbitrator also found "nothing to establish that Mr. DaSilva was induced to execute the Short Form Agreement" or that DaSilva "relied on Union representations other than admitting his key employee to Union membership and providing his company access to a recognized apprentice training program." (*Id.* pp. 12–13.)

Furthermore, the arbitrator found no support for the proposition that DaSilva's signing of the Short Form Agreement was the result of duress. (*Id.* p. 13.) The arbitrator found that "credible evidence neither established nor supported the assertion of fraud in the execution or fraud in the inducement." (*Id.*) In the view of the arbitrator, DaSilva had "an ample and uncoerced opportunity to review the agreement" and "cannot reasonably claim fraud in the inducement, given his asserted failure to request and read the referenced [Collective Bargaining Agreement]" or to request "time for review by an

attorney." (*Id.* p. 14.) The arbitrator recognized that DaSilva was less fluent in English than in Portuguese, but found it more likely that any alleged "lack of understanding related to his belief that he would be able to utilize the Agreement as he saw fit and that the [Union] would not pursue his compliance." (*Id.*)

The arbitrator thus concluded that the Collective Bargaining Agreement was "valid and enforceable, without restriction or limitation" and that CMS violated that Agreement. (*Id.* p. 15.) The arbitrator awarded damages for lost wages and benefits totaling $182,882.30. (*Id.*) The arbitrator also ordered CMS to reimburse the Union $6,250, representing half the arbitrator's fee. (*Id.* p. 16.)

### C. Post-Arbitration Motions

The Union filed its petition to confirm the arbitration award on March 22, 2022. (DE 1.) On April 18, 2022, CMS opposed the Union's petition to confirm and filed a cross-motion to vacate the arbitration award. (DE 8.) The Union filed its opposition on May 2, 2022 (DE 10), to which CMS replied on May 9, 2022 (DE 11). The Union's petition to confirm and CMS's cross-motion to vacate the arbitration award are now before the Court.

## II.   STANDARD OF REVIEW

This Court possesses jurisdiction over this action under § 301 of the LMRA, 29 U.S.C. § 185. *See Screen Actors Guild - Am. Fed'n of Television & Radio Artists, AFL-CIO v. Sheridan Broad. Networks*, 841 F. App'x 369, 372 n.4 (3d Cir. 2020).

The Federal Arbitration Act evinces a strong presumption in favor of enforcing arbitration awards. *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Section 9 of the FAA states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award,

4

and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. In short, unless the arbitration award is vacated pursuant to Section 10 or modified or corrected under Section 11 of the FAA, the award "must" be confirmed.

Assuming the matter was arbitrable in the first place, "[t]he Supreme Court has held that 'the courts play only a limited role when asked to review the decision of an arbitrator.'" *Wilkes Barre Hosp. Co. v. Wyo. Valley Nurses Ass'n PASNAP*, 453 F. App'x 258, 260 (3d Cir. 2011) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. . . . As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596–97 (1960)). This is because "arbitration is a matter of contract," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), so if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *Misco*, 484 U.S. at 38). The moving party bears the burden of proving that the arbitration award at issue should be vacated, and the courts must "accord arbitration decisions exceptional deference." *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d. Cir. 2010).

Section 10(a) provides the grounds upon which a district court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Further, an arbitration "award is presumed valid unless it is affirmatively shown to be otherwise." *Brentwood Med. Assocs.*, 396 F.3d at 241. The Supreme Court has held that these are the "exclusive grounds" for moving to vacate an award. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

## III.   DISCUSSION

CMS seeks to vacate the arbitration award because it was "procured by fraud or undue means" and because the arbitrator demonstrated "partiality and misconduct in failing to properly examine whether the agreement was valid, notwithstanding the evidence presented as to fraud in the inducement/execution." (Cross Mot. p. 10.) Although CMS does not specify the sections on which it relies, the reference is clearly to Sections 10(a)(1), (2), and (3).[2]

---

[2]   I note that CMS does not argue that its claims of fraud in the inducement or fraud in the execution should be decided by a court rather than an arbitrator. In fact, CMS expressly states that it is not challenging the arbitrability of these issues: "Here, the issue presently before the court is not the arbitrability of the case. This case has already been arbitrated." (Reply p. 4.) Additionally, I find no indication that CMS raised an arbitrability objection prior to or during the arbitration hearing. (*See generally* DE 1, 2, 7, 8, 10, 11.) Therefore, I find that the arbitrability of this dispute is not at issue. *See United Indus. Workers, Serv., Transp., Prof'l Gov't of N. Am. of Seafarers' Int'l Union of N. Am. v. Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993) (finding that a Union which "participated in the arbitration hearing without voicing objection to the arbitrator's authority to decide the matter . . . waived its right to challenge the arbitrator's jurisdiction"); *cf. MZM Constr. Co. v. N.J. Bldg. Laborers*

### A. Section 10(a)(1)

To show that an award was procured by corruption, fraud, or undue means under Section 10(a)(1), the moving party must make a three-part showing: "first, that there was a fraud in the arbitration, which must be proven with clear and convincing evidence; second, that the fraud was not discoverable through reasonable diligence before or during the arbitration; and, third, that the fraud was materially related to an issue in the arbitration." *France v. Bernstein*, 43 F.4th 367, 378 (3d Cir. 2022).

CMS contends that the award was "procured by fraud" because of the Union representative's "significant misrepresentations" as to the material terms of the parties' agreement, which DaSilva reasonably relied upon. (Cross Mot. p. 17.) According to CMS, the arbitrator "failed to give due consideration" to the facts presented in support of DaSilva's claims of fraud in the inducement and fraud in the execution. (*Id.*) If the arbitrator had properly considered the facts, CMS argues, he would have found the agreement invalid. (*Id.*)

The following is a summary of the facts that CMS asserts the arbitrator failed to consider: The Union representative materially misrepresented the contents of the Short Form Agreement, which DaSilva was unable to read or comprehend because it was written in English. (*Id.* p. 13.) DaSilva was not given an opportunity to translate the Short Form Agreement to his native language of Portuguese. (*Id.*) The Union representative did not inform DaSilva that the Short Form Agreement incorporated by reference the Collective Bargaining Agreement and did not provide him with a copy of the CBA. (*Id.* pp. 13, 15.) The Union representative did not explain that the word "carpentry" involved more than working with wood. (*Id.* pp. 13–14.) The Short Form Agreement erroneously stated that the Union had obtained the majority support of CMS's employees. (*Id.* p. 14.)

---

*Statewide Benefit Funds*, 974 F.3d 386, 401–02, 405 (3d Cir. 2020) (concluding that the company's fraud in the execution claim was for the court to decide in a case where the arbitrability of that claim was at issue and recognizing that the decision did not preclude parties from delegating contract formation issues to the arbitrator).

I find no indication of corruption, fraud, or undue means on this record. CMS presented the above facts to the arbitrator, which he considered alongside the Union's evidence in his written decision. (*See* Arb Op. pp. 2–3; 11–12.) Although CMS believes it has the stronger case, the mere fact that the arbitrator made findings unfavorable to CMS's case does not imply that the arbitration award was obtained based on fraud or corruption. *See Anoruo v. Tenet HealthSystem Hahnemann*, 697 F. App'x 110, 111 (3d Cir. 2017).

Additionally, CMS relies on two cases to support that the arbitrator wrongly decided its fraud in the inducement/execution claims. (Cross Mot. pp. 19–20.) First, CMS cites and acknowledges *Morales v. Sun Constructors, Inc.*, in which the Third Circuit held that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executes is enforceable." 541 F.3d 218, 222 (3d Cir. 2008). In order to distinguish *Morales*, CMS cites to *Garcia v. U.S. Bancorp* to support his argument that, because of his language barrier and the misrepresentations made by the Union representative, the Short Form Agreement should be found unenforceable. 2012 WL 12892153 (C.D. Cal. June 25, 2012).

CMS's arguments focus on whether the arbitrator ignored the Union's misrepresentations and DaSilva's inability to read English when addressing CMS's claims. (As previously noted, CMS does not assert that the issues of fraud in the inducement/execution were wrongly submitted to the arbitrator for decision. *See* Section III., n.3, *supra*.) I do not find *Morales* or *Garcia* persuasive to support CMS's argument that the arbitration award was procured by fraud. CMS's arguments amount to nothing more than a disagreement with the arbitrator's factfinding and his determination that there was no fraud in the inducement/execution. See *Huertas v. Foulke Mgmt. Corp.*, No. 21-1819, 2021 WL 5984696, at *2 (3d Cir. Dec. 17, 2021).

Therefore, I will not vacate the arbitration award under Section 10(a)(1).

**B. Section 10(a)(2)**

To vacate an award based on evident partiality under Section 10(a)(2), the court must find more than a mere appearance of bias. *See Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251-53 (3d Cir. 2013) (holding that the FAA's evident partiality standard requires a stronger showing for an arbitrator than the judicial "appearance of bias" standard). "An arbitrator is evidently partial only if a reasonable person would have to conclude that she was partial to one side. . . . The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Id.* at 253; *see also Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (3d Cir. 1998) ("The alleged partiality must be direct, definite, and capable of demonstration. . . .").

CMS asserts that the arbitrator exhibited evident partiality because "he failed to recognize that the Union could not contradict the representations made to CMS," which is "clear from the contradictory language in the Short Form Agreement." (Cross Mot. p. 20.) Additionally, according to CMS, the arbitrator made "unsupported assumptions to create a record after the fact where the Union failed to provide proofs." (*Id.* p. 24.) Specifically, the arbitrator found that DaSilva had the opportunity to review the Short Form Agreement himself or to have it reviewed by an attorney, could have requested a copy of the Collective Bargaining Agreement referenced in the Short Form Agreement, and was familiar with collective bargaining agreements since he testified that he had signed other similar agreements. (*Id.* p. 23.)[3]

---

[3]    In relation to these same arguments, CMS states for the first time that the arbitrator "exceeded his authority." (Cross Mot. p. 24.) To the extent CMS is arguing that the award should be vacated under Section 10(a)(4), it would need to show that the arbitrator "grant[ed] relief in a form that cannot be rationally derived from the parties' agreement and submissions or issue[d] an award that is so completely irrational that it lacks support altogether." *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 246 (3d Cir. 2021) (quoting *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219–20 (3d Cir.2012)) (cleaned up). Neither of those factors are shown here, and the facts challenged by CMS are supported by the evidence. The arbitrator heard and considered DaSilva's testimony, but also heard and considered the Union's

CMS's allegations of bias on the part of the arbitrator do not amount to "evident partiality or corruption." *See* 9 U.S.C. § 10(a)(2). Rather, CMS merely disagrees with the arbitrator's reasoning. Such a disagreement is not a sufficient basis to vacate the award for bias under the FAA's "narrow, deferential standard." *See Dunkley v. Mellon Inv. Servs.*, 378 F. App'x 169, 172 (3d Cir. 2010) (rejecting argument of partiality where former employee merely disagreed with the arbitrator's reasoning).

Therefore, I will not vacate the arbitration award under Section 10(a)(2).[4]

## C. Section 10(a)(3)

Under Section 10(a)(3), a court may vacate an arbitration award where the arbitrator engages in "misconduct in refusing to postpone the hearing," in refusing to hear relevant evidence, or engaging in "any other misbehavior" that prejudices a party. 9 U.S.C. § 10(a)(3). "Misconduct" is conduct that "so affects the rights of a party that it may be said that he was deprived of a fair hearing." *CPR Mgmt., S.A.*, 19 F.4th at 245 (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). A "fair hearing" is "one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." *Id.*

CMS states that the arbitrator engaged in misconduct (Cross Mot. p. 10), but does not provide any support for that contention. In any event, I do not find any indication of misconduct on this record. CMS received notice of the arbitration hearing, attended both hearing dates with the representation of

---

testimony on the same matters. CMS simply disagrees with the arbitrator's conclusion, which is not enough to show that the arbitrator exceeded his authority.

[4]     CMS mentions that the arbitrator demonstrated a "manifest disregard for the agreement" and issued an award "totally unsupported by principles of contract construction." (*See* Cross Mot. pp. 9–10, 17, 24). To the extent CMS is asserting a separate ground for vacatur based on the arbitrator's "manifest disregard for the law," its position is based on the same reasons addressed above. In essence, CMS merely states his disagreement with the arbitrator's findings and conclusions, which "is not a proper basis on which to vacate an arbitration award." *See Anoruo*, 697 F. App'x at 112 (rejecting argument to vacate arbitration award based on "manifest disregard for the law" where the moving party simply disagreed with the arbitrator's decision).

counsel, and was permitted to put forth evidence, including DaSilva's own testimony. The arbitrator considered and discussed CMS's evidence in his written opinion.

Therefore, I will not vacate the arbitration award under Section 10(a)(3).

## IV.    CONCLUSION

For the reasons stated herein, the Union's motion to confirm the arbitration award is **GRANTED** and CMS's motion to vacate the arbitration award is **DENIED**. A separate order will issue.

Dated: December 29, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**